[No. G040902. Fourth Dist., Div. Three. June 26, 2009.]

RAINING DATA CORPORATION, Plaintiff and Respondent, v. MARIO BARRENECHEA, Defendant and Appellant.

COUNSEL

The Walker Law Firm, Joseph A. Walker and Jason Matthew Lamb for Defendant and Appellant.

Wilson, Sonsini, Goodrich & Rosati, Ulrico S. Rosales and Michael J. Nader for Plaintiff and Respondent.

OPINION

FYBEL, J.—

## INTRODUCTION

Raining Data Corporation sued Mario Barrenechea, Soheil Raissi, and Adevnet, LLC (collectively referred to as defendants), for misappropriation of trade secrets. Defendants responded with a cross-complaint against Raining Data Corporation and its president and chief executive officer, Carlton Baab. (For simplicity, Raining Data Corporation and Baab will be referred to collectively as Raining Data.[1]) Raining Data filed a motion to strike all causes of action in the cross-complaint, pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP [strategic lawsuit against public participation] motion). (All further statutory references are to the Code of Civil Procedure, unless otherwise specified.) The trial court granted the anti-SLAPP motion, and struck the entirety of the cross-complaint. All three defendants appealed from the order. The appeals of Raissi and Adevnet have been dismissed.

Having reviewed de novo the pleadings and the declarations filed in support of and in opposition to the anti-SLAPP motion, we conclude as follows: (1) Raining Data met its burden of demonstrating the acts underlying the cross-complaint arose from protected activity; any unprotected activity alleged in the cross-complaint was merely incidental to the principal thrust of the cross-complaint, which was that defendants were harmed by the filing of Raining Data's complaint; (2) Barrenechea failed to meet his burden of establishing a probability he would prevail on the cross-complaint, a finding which is not challenged on appeal; and (3) Barrenechea's argument that a cross-complaint cannot be challenged by means of an anti-SLAPP motion, which is raised for the first time on appeal, has been waived; in any event, the argument is meritless. We affirm the order granting the anti-SLAPP motion.

---

[1] During the pendency of this appeal, this court was notified that Raining Data Corporation had changed its name to TigerLogic Corporation.

Barrenechea also appeals from an order granting a motion for attorney fees, filed by Raining Data, pursuant to section 425.16, subdivision (c). We conclude the trial court did not abuse its discretion in granting the motion. The declarations of Raining Data's counsel were sufficient to meet the burden of establishing the reasonableness of the fees incurred, without the need to produce copies of counsel's detailed billing statements. Barrenechea's contention that the case was overstaffed with two law firms, making the fees incurred unreasonable and duplicative, was unsupported. We affirm the award of attorney fees to Raining Data.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

On December 8, 2006, Raining Data Corporation sued defendants for injunctive relief for misappropriation of trade secrets. The complaint alleged Barrenechea and Raissi were former employees of Raining Data Corporation, and Adevnet was a consulting company owned by Barrenechea and Raissi. The complaint further alleged Barrenechea and Raissi, individually and acting as Adevnet, had used, disclosed, or threatened to use or disclose Raining Data Corporation's trade secrets.

Defendants filed an answer and a cross-complaint on January 10, 2007. In the cross-complaint, defendants asserted claims against Raining Data for unfair business practices, violation of civil rights, intentional and negligent interference with prospective economic advantage, malicious prosecution, abuse of process, negligence, and conspiracy, and requested injunctive relief.

Raining Data filed an anti-SLAPP motion on March 16, 2007. The trial court granted defendants' request for limited discovery. After a series of continuances, the anti-SLAPP motion was finally heard on June 27, 2008. Following the hearing, the court granted the anti-SLAPP motion. Raining Data filed a motion for attorney fees. After briefing and a hearing, the trial court granted Raining Data's motion, awarding it $112,353.75. Defendants timely filed notices of appeal of both orders.

During the pendency of the appeal, Adevnet was cancelled by its members, and its appeal has been dismissed. Raissi voluntarily dismissed his appeal, leaving only Barrenechea as an appellant.

### DISCUSSION

### I.

### *ANTI-SLAPP ORDER*

We review the trial court's order granting the anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326 [46 Cal.Rptr.3d 606,

139 P.3d 2].) " 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Id.* at p. 326.)

█ "Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

### A. *Raining Data met its burden of demonstrating the acts underlying the cross-complaint arose from protected activity.*

The claims in the cross-complaint were based on Raining Data's acts of (1) filing the complaint, and (2) communicating with Adevnet's customers and potential customers. Raining Data's "act of filing the complaint in the underlying action squarely falls within section 425.16, subdivision (e)(1)." (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1055 [61 Cal.Rptr.3d 434].) To the extent Raining Data's communications with Adevnet's customers constituted a litigation update, describing the parties' contentions and court rulings, and were directed toward those persons with some involvement in the litigation, they would be protected activity under section 425.16, subdivision (e)(2). (*Contemporary Services Corp. v. Staff Pro Inc., supra*, 152 Cal.App.4th at p. 1055.) Neither the cross-complaint nor the parties' submissions in connection with the anti-SLAPP motion clearly define when the communications occurred, or what their nature was.

█ Two of the causes of action in the cross-complaint—for malicious prosecution and abuse of process—by definition arise from the protected activity of Raining Data's filing of its complaint. The remaining causes of

action present a classic case of mixed claims of protected and nonprotected activity. "[W]here a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected conduct is 'merely incidental' to the unprotected conduct [citations] . . . ." (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103 [15 Cal.Rptr.3d 215].) "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAP[P] statute applies." (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414 [9 Cal.Rptr.3d 242].) " '[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one "cause of action." ' [Citation.] Conversely, a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. [Citation.] We conclude it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494].)

Next, we examine what the cross-complaint alleged Raining Data actually did (or failed to do) in order to determine the gravamen of the cross-claims. In each of the cross-claims, defendants alleged that "in doing the acts herein alleged," Raining Data caused damage and harm to them. Defendants alleged Raining Data caused them damage and harm by making false statements, committing trade libel, engaging in predatory tactics, harassment, intimidation, interfering with prospective economic advantage, filing frivolous lawsuits, intercepting confidential communications, invading their privacy, attempting to discredit defendants' reputations, committing business sabotage, and interfering with defendants' rights of free speech and association. But the cross-complaint alleged very little in terms of specific acts on the part of Raining Data that could form a basis for any cause of action. We set forth here all the specific allegations of Raining Data's conduct or statements causing harm to defendants.

"19. Cross-Defendant RAINING DATA CORPORATION's allegations against these Cross-Complainants of theft of Trade Secrets and improper disclosure of their PDP source code is made all the more interesting because: [¶]—RAINING DATA CORPORATION is not in the business of creating business application software using PDP.NET. This was strictly a marketing effort to [showcase] the capabilities of the PDP.NET product. [¶]—The RAINING DATA CORPORATION PDP.NET source code was not required to accomplish any of these tasks. [¶] . . . [¶]

"33. In essence, the Complaint filed by Plaintiff and Cross-Defendants is a frivolous attempt to find an excuse not to continue support of this particular product and cut down costs in the PDP.NET development and promotion efforts. [¶] . . . [¶]

"42. The claims brought by RAINING DATA that Cross-Complainants somehow benefitted from access to PDP.NET Source in order to provide a solution to Intrametrics' problems or benefitted directly are unrealistic and false and are designed to thwart Cross-Complainants' [startup] business (ADEVNET). [¶] . . . [¶]

"46. The claims the Plaintiff makes in [its] Complaint, including[,] but not limited to, misappropriation of the PDP.NET source code[, are] blatantly false.

"47. The claim that Plaintiff makes that PDP.NET source code knowledge and/or accessibility gives an advantage to develop .NET business applications is also false. [¶] . . . [¶]

"50. Cross-Complainants allege that the Complaint filed against them is an excuse to extradicate [sic] RAINING DATA from a contractual obligation with Intrametrics by blaming BARRENECHEA and RAISSI for RAINING DATA's poor business return on investment on the PDP.NET contractual negotiations with Intrametrics.

"51. Cross-Defendant RAINING DATA terminated BARRENECHEA without just cause on or about November 2005. RAINING DATA failed to pay BARRENECHEA money owed to him and he was forced to settle his wage and hour claims against RAINING DATA. Thus, [Raining Data]'s allegations[2] against him are a retaliatory action designed to interfere with business relationships. [¶] . . . [¶]

"53. Cross-Defendants, and each of them, used threats, intimidation and other illegal conduct, as herein alleged, in order to interfere with the civil rights of Cross-Complainants and prevent lawful trade practices and cause injuries to Cross-Complainants in an amount to be determined.

"54. That said conduct included, but was not limited to, creating false and negative statements about Cross-Complainants to current and prospective clients of said Cross-Complainants. [¶] . . . [¶]

---

[2] The cross-complaint actually says "BARRENECHEA's allegations." In the context of the cross-complaint, this does not make sense. Raining Data noted this apparent typographical error in the trial court and on appeal. Barrenechea has not challenged this correction, and, therefore, we assume our reading of the cross-complaint is correct.

"57. On January 7, 2007, John Parent, President of Wilson Technologies (one of Intrametrics customers) spoke with Cross-Complainants and informed them that Raining Data attorneys told Wilson that Wilson cannot and should not work with ADEVNET LLC, BARRENECHEA or RAISSI and that if Wilson Technologies were interested in any licensing of RAINING DATA products they (Wilson Technologies) must agree not to use/hire/retain Cross-Complainants for any matter.

"58. RAINING DATA is also contacting other companies within the industry to intentionally interfere with Cross-Complainants business opportunities in an unlawful and wrongful manner. [¶] . . . [¶]

"62. That said conduct includes, but was [not] limited to, discriminating and engaging in an attempt to have the industry within which both Cross-Complainants and Cross-Defendants engage in business . . . boycott against Cross-Complainants."

The cross-complaint includes a single specific allegation of Raining Data's conduct causing harm to defendants that is not directly tied to Raining Data's filing of the complaint—the allegation of a communication with Wilson Technologies in paragraph 57. That communication, however, occurred after the filing of Raining Data's complaint, and may or may not be a protected communication. (*Contemporary Services Corp. v. Staff Pro Inc., supra,* 152 Cal.App.4th at p. 1055.) The other allegations that do not specifically reference the filing of the complaint are so vague that we cannot determine whether they refer to the same communication alleged in paragraph 57, or to the filing of the complaint, or both, or to something else that is not specifically mentioned in the cross-complaint.

In support of the anti-SLAPP motion, Raining Data submitted declarations from Baab and Thomas Lim, its chief financial officer, in which they declared they had not undertaken, nor were they aware of any other Raining Data employee ever undertaking, the activities alleged by defendants, detailed *ante*. Raining Data also offered the declarations of its counsel, stating the allegations in paragraph 57 of the cross-complaint were false.

Defendants submitted the declarations of Barrenechea and Raissi, as well as the declarations of Adevnet customers James Roach, Mark H. Allen, and Chris Ruhling. The trial court determined these declarations were inadmissible, because they contained hearsay (Evid. Code, § 1200), lacked proper foundation (Evid. Code, § 702), and, in the case of Roach's and Ruhling's declarations, were not properly executed (Code Civ. Proc., § 2015.5). On appeal, Barrenechea does not challenge the trial court's evidentiary rulings.

We conclude the trial court correctly found the gravamen of the cross-complaint was directed at Raining Data's filing of the complaint—a

protected activity—and the incidental reference to one potentially nonprotected activity could not save the entire cross-complaint from the anti-SLAPP motion.[3]

 B. *In the trial court, defendants did not establish the probability they would prevail on the cross-complaint; on appeal, Barrenechea has waived the issue.*

Once the trial court determined the acts underlying the cross-complaint arose from protected activity, the burden shifted to defendants to show a probability of prevailing on the cross-claims. They failed to do so.

Defendants' opposition to the anti-SLAPP motion did not directly address the probability of prevailing. Rather, it referred to declarations by Barrenechea, Raissi, and Adevnet's actual and potential customers, and to a separate statement of material facts and evidence which, defendants claimed, showed they had met their burden of producing competent evidence supporting the primary allegations of each cause of action in the cross-complaint. The trial court ruled two of the declarations were inadmissible pursuant to section 2015.5, because they were not executed under the laws of the State of California; four other declarations contained matters without proper foundation and hearsay; and the separate statement of material facts and evidence offered in opposition to the anti-SLAPP motion was an unauthorized attempt to circumvent the page limits on defendants' opposition brief. The court therefore found defendants had failed to meet their burden of showing a probability of prevailing on the merits of the cross-complaint.

 ██ In his appellate briefs, Barrenechea did not argue that he had established a probability of prevailing on the merits of any of the cross-claims. Indeed, on appeal, Barrenechea asserts, "[s]imply stated, Respondent [Raining Data Corporation] and Respondent Baab did not meet their initial burden, and, as such, *the burden never shifted to Appellants to prove [a] probability that they will prevail on the causes of action.*" (Italics added.) If an appellant fails to raise a point in an appellate brief, we may treat the issue as waived; we do so here. (*Nelson v. Avondale Homeowners Assn., supra,* 172 Cal.App.4th at p. 862; *Badie v. Bank of America, supra,* 67 Cal.App.4th at pp. 784–785.)

---

[3] In defendants' opposition to the anti-SLAPP motion, their principal argument was that the conduct and speech alleged in the cross-complaint as the basis for defendants' cross-claims were within the commercial speech exception defined in section 425.17, subdivision (c). Barrenechea does not argue on appeal that section 425.17, subdivision (c) applies. Barrenechea has therefore waived the argument on appeal. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [91 Cal.Rptr.3d 726]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

### C. Compulsory/permissive cross-claims

For the first time on appeal, Barrenechea contends his causes of action against Raining Data Corporation were compulsory cross-claims, and his causes of action against Baab were permissive cross-claims. Barrenechea argues separately that a compulsory cross-claim may not be stricken by an anti-SLAPP motion, and that a permissive cross-claim may not be stricken by an anti-SLAPP motion. If we were to accept Barrenechea's arguments, we would be forced to reach the conclusion that a cross-complaint, unlike a complaint, can never be subject to an anti-SLAPP motion, because all the cross-claims must be either compulsory or permissive.

In addition to contradicting the clear legislative intent behind the anti-SLAPP statute, such a conclusion would be against the weight of clear authority permitting cross-complaints and cross-claims to be stricken by means of anti-SLAPP motions. (See, e.g., *Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620 [77 Cal.Rptr.3d 707] [affirming order granting motion to strike cross-complaint for malicious prosecution]; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 [74 Cal.Rptr.3d 1] [cross-complaint for, inter alia, retaliatory eviction, breach of contract, and breach of the implied covenant of quiet enjoyment in response to complaint for unlawful detainer; anti-SLAPP motion properly granted]; *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255 [73 Cal.Rptr.3d 383] [affirming order granting motion to strike cross-complaint for defamation]; *Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347 [64 Cal.Rptr.3d 504] [reversing order denying motion to strike cross-complaint].)

■ Some, but not all, cross-complaints are subject to anti-SLAPP motions. "Although a cross-complaint may be subject to a section 425.16 motion, not all cross-complaints would qualify as SLAPP suits. A defendant may file a cross-complaint against the plaintiff for any existing cause of action regardless of its nature and origins. [Citation.] Only those cross-complaints alleging a cause of action *arising* from the plaintiff's act of filing the complaint against the defendant and the subsequent litigation would potentially qualify as a SLAPP action. [Citation.] For example, a person may attempt to bring a SLAPP suit alleging that libelous allegations or statements were contained in the complaint itself. However, because defendant's allegations are privileged communications under Civil Code section 47, the suit would be meritless. [Citation.] [¶] A compulsory cross-complaint on a 'related cause of action' against the plaintiff [citation] would rarely, if ever, qualify as a SLAPP suit arising from petition activity. By definition, a 'related cause of action' is 'a cause of action which *arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint.*' [Citation.] The SLAPP

suit is not 'related' to the transaction or occurrence which is the subject of the plaintiff's complaint, but arises out of the litigation process itself." (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 651 [49 Cal.Rptr.2d 620].)

In *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 924–925 [116 Cal.Rptr.2d 187], Kajima Engineering and Construction, Inc., sued the city for breach of contract, alleging the city had failed to pay it for work on a construction project. The city cross-claimed, alleging breach of contract and breach of the implied covenant of good faith and fair dealing in connection with Kajima's bidding and work on the project. (*Id.* at p. 925.) The city later amended its cross-complaint to add 19 additional causes of action against Kajima and its two parent companies. (*Ibid.*) Kajima filed an anti-SLAPP motion against the entire cross-complaint; the trial court ultimately granted the motion as to one cause of action. (*Id.* at pp. 925–926.) The appellate court concluded the trial court did not err in denying the motion as to the other causes of action, which alleged Kajima's fraudulent acts in the bidding, billing, and work processes. (*Id.* at pp. 929–930.) The appellate court noted, "[i]t is only the 12th cause of action struck by the trial court that mentions Kajima's specific act in filing the underlying complaint in this action." (*Id.* at p. 930.) The court concluded that because the majority of the acts alleged in the cross-complaint occurred while Kajima was "seeking to secure and working on a construction project," not while it was "exercising its right of petition," Kajima's anti-SLAPP motion was properly denied as to all but one cause of action because "Kajima's concessions . . . demonstrate the alleged improper conduct does not arise from Kajima's petitioning activities but rather from its bidding and contracting practices." (*Ibid.*)

As explained in detail, *ante*, the conduct and statements of Raining Data alleged in the cross-complaint arose from protected activity, or were incidental thereto. The gravamen of the entire cross-complaint was based on Raining Data Corporation's filing of the complaint. Therefore, applying the analysis of *Church of Scientology v. Wollersheim, supra,* 42 Cal.App.4th 628 and *Kajima Engineering & Construction, Inc. v. City of Los Angeles, supra,* 95 Cal.App.4th 921, the cross-complaint *was* subject to an anti-SLAPP motion.[4]

---

[4] Barrenechea did not argue in the trial court that compulsory and permissive cross-claims are not subject to a motion to strike under section 425.16. Raining Data argues the issue has therefore been waived. (See *McKee v. Orange Unified School Dist.* (2003) 110 Cal.App.4th 1310, 1320 [2 Cal.Rptr.3d 774].) Barrenechea contends the argument is not barred by the waiver doctrine because the issue is purely a question of law, which we may consider for the first time on appeal. In light of our holding, we need not consider the issue of waiver.

## II.

### Attorney Fees Order

■ Section 425.16, subdivision (c) makes an award of attorney fees to a defendant, who prevails on an anti-SLAPP motion, mandatory. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735].)[5] We review the amount of attorney fees awarded for abuse of discretion. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322 [81 Cal.Rptr.3d 866].) A trial court's attorney fee award will not be set aside "absent a showing that it is manifestly excessive in the circumstances." (*Children's Hospital & Medical Center v. Bonta´* (2002) 97 Cal.App.4th 740, 782 [118 Cal.Rptr.2d 629].)

■ On appeal, Barrenechea makes two arguments to support his claim that the attorney fees awarded by the trial court were manifestly excessive under the circumstances. First, Barrenechea contends Raining Data failed to meet its initial burden to establish the reasonableness of the fees incurred because it did not submit its attorneys' billing statements. Barrenechea claims the declarations from Raining Data's attorneys "do not provide any basis for determining how much time was spent by any one attorney on any particular claims. Rather, the declarations give broad descriptions to the work provided by each attorney. The declarations are devoid of any information to allow the trial court to determine whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." The law is clear, however, that an award of attorney fees may be based on counsel's declarations, without production of detailed time records. (See *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1398 [84 Cal.Rptr.3d 754]; *Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587 [46 Cal.Rptr.2d 677].) Raining Data's attorneys provided declarations detailing their experience and expertise supporting their billing rates, and explained the work provided to Raining Data. Barrenechea did not offer any evidence to challenge any statement in Raining Data's counsel's declarations.

Second, Barrenechea contends the case was overstaffed with attorneys from two law firms, and the entirety of the fees incurred by the attorneys from one firm should have been stricken by the trial court. (The trial court did strike the fees incurred by one attorney from that firm as duplicative and unnecessary.) Inefficient or duplicative efforts by counsel may not be compensated. (*Ketchum v. Moses, supra*, 24 Cal.4th at p. 1132.) Raining Data's counsel's declarations explained how the two law firms collaborated on the

---

[5] The term "defendant" as used in section 425.16 applies equally to a cross-defendant. (§ 425.16, subd. (h).)

anti-SLAPP motion, by allocating different legal issues between the firms and assigning different tasks to each. An "assertion [that] is unaccompanied by any citation to the record or any explanation of which fees were unreasonable or duplicative" is insufficient to disturb the trial court's discretionary award of attorney fees. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1248 [132 Cal.Rptr.2d 57].)

DISPOSITION

The orders are affirmed. Respondent to recover costs and attorney fees on appeal, the amount of which shall be determined by the trial court.

Bedsworth, Acting P. J., and Aronson, J., concurred.