Filed 9/17/14  Reif v. Cal. Congress of Parents et al. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RACHEL REIF, | |
| Plaintiff and Appellant, | E056902 |
| v. | (Super.Ct.No. RIC206139) |
| CALIFORNIA CONGRESS OF PARENTS, TEACHERS, AND STUDENTS, INC. et al., | OPINION |
| Defendants and Appellants; | |
| MARILYN ORENS, | |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.

Dismissed.

Cihigoyenetche, Grossberg & Clouse, Anthony C. Ferguson and Richard R.

Clouse, for Defendants and Appellants and Defendant and Respondent.

Walker Trial Lawyers LLP, Barry M. Walker and Amy M. Oakden. for Plaintiff

and Appellant Rachel Reif.

1

Rachel Reif (plaintiff) was terminated from her position as a Health Educator/Health Services Assistant for the Riverside County Department of Public Health, Injury Prevention Services—Safe Routes to School ("SRTS") program.  She then brought suit against California Congress of Parents, Teachers and Students, Inc. (PTA), Sandra Ramirez (Ramirez), Marilyn Orens (Orens), Sherri Power (Power), and Lauri Byers (Byers) (collectively, defendants), alleging four causes of action:  defamation, as well as intentional and negligent infliction of emotional distress against all defendants, and negligence (failure to supervise) against PTA only.

The present appeal and cross-appeal arise from the trial court's order granting in part and denying in part defendants' special motion to strike the complaint as a strategic lawsuit against public participation (anti-SLAPP motion) pursuant to Code of Civil Procedure[1] section 425.16 (the anti-SLAPP statute).  The court granted the motion only with respect to Orens, striking the claims asserted against her.  The motion was denied with respect to all remaining defendants.

Defendants (with the exception of Orens) appeal the partial denial of their anti-SLAPP motion, contending the court erred when it determined the statements allegedly made by Byers, Ramirez, and Power were not protected under the anti-SLAPP statute.  Plaintiff cross-appeals the partial grant of the motion with respect to Orens, contending the trial court erred by treating her alleged statements as protected under the anti-SLAPP statute.  We would have affirmed in part and reversed in part the trial court's order,

<hr />

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

finding that defendants' anti-SLAPP motion should have been granted with respect to all defendants. However, after this case was fully briefed, our tentative opinion mailed to the parties, and oral argument had been scheduled at the request of plaintiff and appellant, we received requests for dismissal of the appeals. We therefore dismiss the appeals.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

In 2008, plaintiff became president of the PTA chapter at Mark Twain Elementary School in Riverside. In the fall of 2009, after a transition from one PTA treasurer to another, it was determined that plaintiff had received certain reimbursements in error, and there were also some missing receipts.[3] Plaintiff attributes these mistakes to accounting errors by the former treasurer, and contends that she returned all money mistakenly paid to her (about $800 total). Nevertheless, the principal of Mark Twain Elementary School asked plaintiff to step down as PTA president, stating that she had been directed to make this request by the 23rd District PTA. Plaintiff resigned, as requested, without conceding any wrongdoing.

The resignation did not, however, put an end to the matter. After her resignation, plaintiff alleges Power—who had preceded plaintiff as PTA president at Mark Twain Elementary, and who had first brought the mistaken payments to plaintiff's attention—

---

[2] We derive our summary of facts from the complaint and from the evidence submitted in support of and against the anti-SLAPP motion.

[3] The complaint places the date of these events as fall of 2008, but plaintiff's declaration submitted in support of her opposition to defendants' anti-SLAPP motion indicates fall 2009. Given the further information that these events occurred in plaintiff's "second term as PTA President," it appears fall of 2009 is more probably the correct date. In any case, the date is not material to the substantive issues raised by the parties.

3

spread rumors about plaintiff's purported financial misconduct, including stealing from the PTA.[4] In a November 2009 meeting with PTA representatives—Byers, who was then the PTA Riverside Council President, participated, among others—plaintiff asked for an opportunity to formally clear her name; however, no charges were ever filed, nor any formal proceeding of any sort held.

Several years later, in January 2012, plaintiff was hired by SRTS program to serve as a health educator/health services assistant. On February 20, 2012, plaintiff made a presentation at a meeting held at Jefferson Elementary School about the SRTS program, and in particular about a new barcode system for tracking children who walk or ride their bicycles to school. In addition to plaintiff's presentation, the meeting included a raffle to "persuade more volunteers to attend the meeting," the prizes for which (an iPod and digital camera) had been donated by the Jefferson Elementary principal. Plaintiff characterizes the meeting as "a success," leaving plaintiff and her coworkers, as well as the principal of Jefferson Elementary, "excited" about the new program, which was projected to start a few weeks later, on March 7, 2012.

Before the new system could be implemented, however, defendants allegedly made certain statements that resulted in plaintiff's termination. Plaintiff contends Power and Ramirez told Orens, then the Riverside Council PTA president, that plaintiff had embezzled money from the PTA and as a result had been "involved with the police."

---

[4] It should be noted that these alleged statements by Byers in 2009 are apparently pleaded as background information, and not as the basis for any claim. Though allegations relating to the events of 2009 are incorporated by reference into plaintiff's causes of action, the statements that are the explicitly pleaded basis for plaintiff's claims are those from February 2012, described below.

Orens conveyed those statements to plaintiff's supervisor, Gail Carlson, in a February 21, 2012, phone call, and indicated that PTA and Riverside County Unified School District would not support the SRTS program if plaintiff continued to be involved.

Additionally, plaintiff contends that Byers contacted the Jefferson Elementary School principal conveying the same information: that plaintiff had embezzled money from the PTA and as a result had been "involved with the police." On February 22, 2012, plaintiff's supervisor allegedly learned that the principal, who previously had been actively supportive of the program, had been "instructed" by Byers and the 23rd District PTA not to participate in the SRTS program if plaintiff was involved.

Plaintiff explained to her supervisor, Gail Carlson, her perspective on the events that led to her resignation as PTA president and the rumors that had spread after her resignation. Plaintiff also explained that no formal charges had ever been brought, police had never been involved, and that there had been no formal proceeding of any sort in which she could defend herself or clear her name. Nevertheless, on February 28, 2012, plaintiff was terminated because she was not able to work effectively with the schools and, according to the declaration of her supervisor, "as a direct result of the information received from representatives of the PTA."

Plaintiff's complaint, alleging four causes of action, was filed on April 24, 2012. Three causes of action—the first, third, and fourth, for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress, respectively—are asserted against all defendants. Plaintiff's second cause of action, for "Negligence (Failure To Supervise)," is asserted only against PTA.

5

Defendants' anti-SLAPP motion was filed on June 5, 2012. After a hearing on July 12, 2012, in a written order filed August 6, 2012, the court granted the motion with respect to Orens and struck the claims asserted against her. The court found that Orens's alleged statements were protected under the anti-SLAPP statute, and there was no likelihood of success on the merits due to the litigation privilege. The court denied the motion in all other respects, finding the statements alleged to have been made by other defendants not to be protected under the anti-SLAPP statute.

## II. DISCUSSION

### A. Overview of Anti-SLAPP Motions

Courts construe the anti-SLAPP statute broadly to protect the constitutional rights of petition and free speech. (§ 425.16, subd. (a); *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 199.) In ruling on an anti-SLAPP motion, the trial court conducts a two-part analysis: the moving party bears the initial burden of establishing a prima facie case that the plaintiff's cause of action arose from the defendant's actions in the furtherance of the rights of petition or free speech. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If the moving party meets its burden, the burden shifts to the plaintiff to establish a probability that he or she will prevail on the merits. (§ 425.16, subd. (b)(1); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314 (*Flatley*).)

A defendant meets its threshold burden of demonstrating that a cause of action arises from protected activity by showing that the act or acts underlying the claim fit one or more of the four categories described in section 426.16, subdivision (e). (*Navellier v.*

*Sletten* (2002) 29 Cal.4th 82, 88.) These categories include "any written or oral statement or writing" that is "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" (§ 425.16, subd. (e)(1)), "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" (*id.*, subd. (e)(2)), or "made in a place open to the public or a public forum in connection with an issue of public interest" (*id.*, subd. (e)(3)), as well as "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (*id.*, subd. (e)(4)).

"'""A plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'" [Citation.] Conversely, a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. [Citation.] [Thus] it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.' [Citation.]" (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1369 (*Raining Data Corp*).) Additionally, "a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a *garden variety* tort claim

7

when in fact the liability claim is predicated on protected speech or conduct. [Citation.]" (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519 (*Ramona*).)

"'Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley*, *supra*, 39 Cal.4th at pp. 325-326.)

The plaintiff's evidence in support of its showing on the second part of the anti-SLAPP analysis must be sufficient to support a judgment in its favor if proved at trial. (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 845.) Under section 425.16, the merits of the lawsuit are evaluated "using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) Plaintiff incorrectly asserts we should instead perform an analysis similar to that on demurrer, accepting the allegations of the complaint as true and viewing them in the light most favorable to plaintiff. But it is well established that "a plaintiff opposing an anti-SLAPP motion cannot rely on allegations in the complaint, but must set forth evidence that would be admissible at trial." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699 (*Overstock*).) Even if the complaint in this case were verified—it is not—the allegations therein would be insufficient to satisfy the second step of the anti-SLAPP analysis. (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th

8

418, 426.)  The pleadings are relevant to the first step of the analysis, that is, determining whether the causes of action that are the subject of the anti-SLAPP motion arise from protected activity.  (See, e.g., *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1522 (*Garretson*) [Fourth Dist., Div. Two] [analyzing "pleadings and other related documents" to determine whether cause of action arose from protected activity].)

## B.  Analysis

The gravamen of each of the causes of action asserted in the complaint is that plaintiff was injured by statements made by Orens, Power, Ramirez, and Byers.  (See *Raining Data Corp.*, *supra,* 175 Cal.App.4th at p. 1369 ["it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies . . . ."].)  The first cause of action for defamation obviously does so most directly.  Plaintiff's third and fourth causes of action, for intentional and negligent infliction of emotional distress, too, assert only claims of injury from the publication of the statements by the individual defendants.  Plaintiff's claims against the PTA— including the second cause of action for negligent supervision asserted only against the PTA, as well as the remaining three causes of action asserted against "all defendants"— all rest on the theory that the PTA is responsible, one way or another, for the injurious statements made by the individual defendants.  No allegations that the PTA published any statements of its own are included.[5]

---

[5]  The trial court remarked that it saw "no reason why the second cause of action for negligent supervision falls under any portion of the anti-SLAPP statute."  But we do: the gravamen of the negligent supervision cause of action is that the individual defendants made certain statements that harmed plaintiff, and that the PTA is responsible

*[footnote continued on next page]*

Our analysis of whether the anti-SLAPP statute applies, therefore, must begin with analysis of whether the alleged statements by each of the individual defendants fall within subdivision (e) of section 425.16. We will then turn separately to the second prong of the SLAPP analysis, probability of success.

*1. Statements by Orens to Plaintiff's Supervisor*

The trial court, relying on *Lee v. Fick* (2005) 135 Cal.App.4th 89 (*Lee*), found that the statements by Orens to plaintiff's supervisor are protected activity under section 425.16, subdivision (e)(1). We agree with the trial court's analysis, and expand upon it below, finding the statements protected under both subdivision (e)(1) and, in the alternative, subdivision (e)(4).

There is no question that the plaintiff's former employer is an official agency, as a subdivision of the Riverside County government. Indeed, plaintiff has not challenged the trial court's finding that the County possesses the "quasi-judicial power" that is one of the possible bases for considering any proceedings it might conduct to be "official proceedings" in the meaning of section 425.16, subdivision (e)(1). (See *Lee*, *supra*, 135 Cal.App.4th at pp. 96-97)

*[footnote continued from previous page]*

for those statements. (See *Raining Data Corp.*, *supra,* 175 Cal.App.4th at p. 1369.) If the statements themselves are protected under the anti-SLAPP statute as to the defendant who uttered the statements, it follows that any claim arising from the statements as to any defendant would be subject to an anti-SLAPP motion. Plaintiff's negligent supervision claim is predicated on what defendants have contended is protected speech, though the claim is pleaded as the garden variety tort of negligent supervision; it is subject to an anti-SLAPP motion on that basis. (See *Ramona*, *supra*, 135 Cal.App.4th at p. 519.) We address below whether the statements are in fact protected speech.

10

Plaintiff does contend that Orens's statements were not made as part of an "official proceeding" in the meaning of the anti-SLAPP statute. We disagree. At the time the statements were made, there was no ongoing investigation of plaintiff, but "communications to an official agency intended to induce the agency to initiate action are part of an 'official proceeding,'" as that term is in the anti-SLAPP statute. (*Lee*, *supra,*135 Cal.App.4th at p. 96; see *Brody v. Montalbano* (1978) 87 Cal.App.3d 725, 732-733.) Moreover, "official proceeding" should not be equated with "formal hearing": matters that are resolved informally may equally be "official proceedings." (*Lee*, *supra*, at p. 97.) Such official proceedings may include, at least in some circumstances, those leading to termination of an employee by a public agency, among other things.[6] (See, e.g., *id*. at p. 91 [involving termination of high school coach by school officials].)

Orens's statements to plaintiff's supervisor, as alleged in the complaint, did not include an express request to initiate official proceedings to remove plaintiff from her position. But there is "no requirement" that a communication "expressly request an investigation, hearing or that the agency take any particular action" to fall within the protection of the anti-SLAPP statute. (*Lee*, *supra*, 135 Cal.App.4th at p. 97.) And the assertion that the PTA and Riverside County Unified School District would not support

---

[6] Plaintiff's assertion that *Lee* is "expressly limited to complaints made by parents to school authorities about a teacher or principal in the performance of his or her official duties" is incorrect. Rather, the holding in *Lee* is an application of general principles—and in particular the principle that "communications to an official agency intended to induce the agency to initiate action are part of an 'official proceeding'" (*Lee*, *supra*, 135 Cal.App.4th at p. 96)—that have long been applied in a broad range of situations. (See, e.g., *Braun v. Bureau of State Audits* (1998) 67 Cal.App.4th 1382, 1390 [collecting some of the "many cases" applying the principle].)

11

the SRTS program if plaintiff continued to be involved is, among other things, a nearly-direct request to remove plaintiff from any involvement.

In short, Orens's statements to plaintiff's supervisor were communications to an official agency, which in essence ask the county to initiate any proceedings authorized by law—formal or informal—that might be necessary to remove plaintiff from any participation in the SRTS program, and explain the reasons why she believed such action was necessary. Thus, the statements are protected acts under section 425.16, subdivision (e)(1).

In addition, even if the statements were not protected under subdivision (e)(1) of section 425.16, they would be protected under subdivision (e)(4), as "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." To qualify for protection under subdivision (e)(4), the issue must be one of concern to a substantial number of people, not merely a private controversy of interest to the speaker and a relatively small, specific audience. (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132.) At the same time, the issue must not be one of broad, amorphous public interest, but rather one identifiable in time and place, and the challenged statements must bear a significant relationship to the asserted public issue. (*Id.* at pp. 1132-1133.) A public issue has been found where statements "concerned a person or entity in the public eye [citations], conduct that could directly affect a large number of people beyond the direct participants [citations] or a topic of widespread, public interest [citations]." (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105

12

Cal.App.4th 913, 924 (*Rivero*).)  Where the issue is of interest only to a limited but definable portion of the public such as a private group, organization, or community, "the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance."  (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119 (*Du Charme*), fn. omitted.)

We agree with plaintiff that "whether or not [she] embezzled $800 from the PTA over three years ago" is not a public issue or an issue of public interest.  We disagree, however, with plaintiff's framing of the issue.  Orens's comments to plaintiff's supervisor were made in connection with an issue of public interest, namely, whether and under what conditions the PTA and Riverside Unified School District would support and participate in a Riverside County program intended for the benefit of schoolchildren.  This issue is of widespread interest at least to Riverside public school students and their parents, specifically, as well as other citizens who may take an interest in the public schools and the safety of children in Riverside County, or the expenditure of public funds more generally.  We do not view this as such a narrow subsection of the public that any additional showing of an "ongoing controversy, dispute or discussion" is necessary.  (See *Du Charme*, *supra*, 110 Cal.App.4th at p. 119.)  But in any case, even if the program had not previously been the subject of an ongoing *controversy*, as plaintiff emphasizes, it was an ongoing topic of public *discussion*.  As the complaint alleges, before Orens made her statements, plaintiff presented at a public meeting at Jefferson Elementary school to

13

publicize and advocate for the program, including efforts to draw in more "volunteers" to participate. Indeed, it was apparently this public discussion of the SRTS program that brought plaintiff's participation to defendants' attention, leading to the alleged statements that form the basis of this lawsuit. We conclude that Orens's statements qualified for protection under subdivision (e)(4) of section 425.16.

In support of the contrary conclusion, plaintiff analogizes to *Rivero*. *Rivero*, however, is distinguishable on its facts. In *Rivero*, the defendant union published complaints about a supervisor that included charges of petty theft, nepotism, acceptance of bribes, and abusive treatment of employees (janitors at a public university). (*Rivero*, *supra*, 105 Cal.App.4th at pp. 916-917) The Court of Appeal upheld the denial of the union's anti-SLAPP motion, which had sought to strike the supervisor's claims for libel and slander, among others. (*Rivero*, *supra*, at p. 930.) The Court of Appeal reasoned that the statements at issue were made in connection with the supervisor's allegedly improper treatment of a staff of eight individuals, which was not in and of itself a matter of public interest. (*Id.* at p. 925.) The court found no sufficient connection between the statements and broader issues that might be of public interest, such as significant waste or abuse of funds, or a larger union dispute, as opposed to an "isolated incident." (*Id.* at pp. 925-928.)

The connection to a larger public issue that was missing in *Rivero* is present in this case. To be sure, not every petty theft of funds from a PTA, even by someone who later becomes a public employee, is a public issue. Orens's statements about plaintiff's purported misuse of PTA funds, however, were made in connection with the public issue

14

of whether the PTA and Riverside Unified School District would participate in a Riverside County initiative for the benefit of public school students. As such, the statements are entitled to protection under section 425.16, subdivision (e)(4).

Since Orens's statements were protected activity under section 425.16, subdivisions (e)(1) and (4), the burden therefore shifted to plaintiff to establish a probability that she would prevail on the merits. (§ 425.16, subd. (b)(1); *Flatley*, *supra*, 39 Cal.4th at p. 314. We will address plaintiff's attempt to meet that burden in subsection 4, below.

### 2. *Statements by Power and Ramirez to Orens*

The trial court found that none of the four categories of protected activity set out in subdivision (e) of section 425.16 apply to the alleged statements by Power and Ramirez to Orens, the substance of which Orens then passed on to plaintiff's supervisor. We disagree. Power's and Ramirez's statements are protected under subdivisions (e)(1) and (e)(4) of the anti-SLAPP statute.

First, the protections of the anti-SLAPP statute—specifically, subdivision (e)(1)—extend to communications among interested parties preparatory to requesting initiation of official proceedings. "In order to be effective in pressing their complaints to school authorities, parents must be free to communicate with each other without fear of liability. [Citation.] Such communications between interested parties are protected by the privilege. [Citation.]" (*Lee*, *supra*, 135 Cal.App.4th at p. 97) "To accomplish the purpose of judicial or quasi-judicial proceedings, it is obvious that the parties or persons interested must confer and marshal their evidence for presentation at the hearing." *Pettitt*

15

*v. Levy* (1972) 28 Cal.App.3d 484, 490 [discussing litigation privilege].)  The right to do so "unchilled by the thought of subsequent judicial action" is part of the "fundamental" right to make such preparations.  (*Id.* at pp. 490-491.)

In accordance with the above principles, if Power and Ramirez were not consulting with Orens in preparation for initiation of official proceedings, but merely relaying gossip (which Orens then acted on by her own initiative), subdivision (e)(1) of the anti-SLAPP statute would not apply.  But the circumstances alleged in the complaint do not lend themselves to the conclusion that Power and Ramirez were merely gossiping when they relayed information about plaintiff's purported theft of PTA funds.  Power and Ramirez both are or have been not only members, but leaders in the PTA.  Their communications with Orens led immediately to Orens's communications with plaintiff's supervisor conveying the request for initiation of official proceedings to remove plaintiff and the information that the PTA would not participate in the SRTS program unless plaintiff was removed.  We conclude, therefore, that defendants made an adequate showing the statements were communications among interested parties preparatory to a request to initiate official proceedings, and thus protected under subdivision (e)(1) of the anti-SLAPP statute.

The communications by Power and Ramirez to Orens are also protected under subdivision (e)(4) of the anti-SLAPP statute.  The same reasons discussed above with respect to Orens's statements to plaintiff's supervisor apply to support the conclusion Power and Ramirez were engaging in "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with

16

a public issue or an issue of public interest" when they made their alleged statements to Orens. (§ 425.16, subd. (e)(4).) As such, the burden shifted to plaintiff to show a likelihood of success; we discuss that issue below, in section (B)(4).

*3. Statements by Byers to Principal of Jefferson Elementary*

The trial court found that none of the four categories of protected activity set out in subdivision (e) of section 425.16 apply to the alleged statements by Byers to the principal of Jefferson Elementary. Again, we disagree. Subdivision (e)(4) applies to these statements, even though subdivision (e)(1) does not.

Unlike the statements discussed above, those by Byers to the principal of Jefferson Elementary are not entitled to protection under subdivision (e)(1) of section 425.16, because Byers was not asking for the principal to initiate any official proceedings. The principal was not plaintiff's employer, and had no authority to initiate any sort of proceedings with respect to plaintiff's participation in the SRTS program.

Nevertheless, the statements by Byers to the principal are protected under subdivision (e)(4) of section 425.16. Again, the allegations of the complaint establish that she was not merely gossiping about plaintiff allegedly embezzling money from the PTA. Rather, she is alleged to have "instructed" the principal not to participate in the SRTS program if plaintiff was involved. As such, any statements she made about plaintiff were made in connection with a public issue—namely, whether and under what conditions the school should participate in the SRTS program—and fell within the protections of the anti-SLAPP statute.

17

### 4. *Probability of Prevailing on the Merits*

The trial court never reached the second step in the SLAPP analysis except with respect to Orens, whose statements it found to be protected by the litigation privilege, making it impossible for plaintiff to show probability of success as to claims against Orens. As discussed above, we disagree with the trial court's conclusions regarding whether the statements by defendants other than Orens fell within the protections of the anti-SLAPP statute, so we must consider plaintiff's evidence as to all defendants. We can decide the issue without remand to the trial court for a decision in the first instance, because it is a question subject to independent review. (See *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615-616; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999, 1010 [Fourth Dist., Div. Two].)

First, to the extent the statements discussed above fall within subdivision (e)(1) of Code of Civil Procedure section 425.16, they also fall within the ambit of the litigation privilege in Civil Code section 47, subdivision (b), precluding plaintiff from demonstrating any probability of success. The litigation privilege bars tort causes of action other than claims of malicious prosecution based on privileged publications or broadcasts, including those made in "official proceeding[s] authorized by law." (Civil Code, § 47, subd. (b); *Flatley*, *supra*, 39 Cal.4th at pp. 321-322 & fn. 9). Although some courts—and defendants in their briefing on appeal—have broadly characterized the anti-SLAPP statute and the litigation privilege codified in Civil Code section 47 as "congruent" or "coextensive" (see, e.g., *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1288, fn. 23), that

18

is not a complete statement of the law. The California Supreme Court in *Flatley, supra*, 39 Cal.4th at pp. 322-323, stated that the scope of protection under the two statutes is not identical and, although "[t]he language in [Code of Civil Procedure] section 425, subdivision (e)(1) and (2) parallels the description of privileged communications in Civil Code section 47, subdivision (b), . . . this does not necessarily mean the two statutes are coextensive or congruent in scope as applied." (*Garretson*, *supra*, 156 Cal.App.4th at p. 1518 [discussing *Flatley*].) In *Flatley*, for example, the Supreme Court concluded that, even if certain extortionate communications were protected under the litigation privilege, it would not be "consistent with the language or the purpose of the anti-SLAPP statute to protect such threats." (*Flatley*, *supra*, at p. 322.) Nevertheless, plaintiff has not argued that subdivision (e)(1) and the litigation privilege are different in scope as applied to the facts of this case. To the contrary, plaintiff concedes that if Code of Civil Procedure section 425.16, subdivision (e)(1) applies to the statements, the "absolute privilege under Civil Code section 47 would also apply." Nor do we see any reason to conclude otherwise.

Second, plaintiff's evidentiary showing is inadequate with respect to all of her asserted causes of action. Plaintiff's claims are all predicated on the notion that each of the individual defendants published certain defamatory statements about plaintiff in February 2012, namely, that plaintiff had embezzled money from the PTA and "as a result had been involved with the police." Her evidence consists of two declarations; one from plaintiff, the other from her former supervisor at the SRTS program, Gail Carlson. Nothing in these declarations, however, establishes that any defendant published any of

19

the alleged defamatory statements. Plaintiff's own declaration contains the assertion that Power had "spread rumors" about her *in 2009*, but nothing about any statements Power or the other defendants may have made in 2012.[7] Gail Carlson avers that plaintiff "was terminated from her employment . . . as a direct result of the information received from representatives of the PTA," but her declaration does not specifically identify any of the "representatives of the PTA," nor does it include any description of the "information" she received from them. There is nothing in either declaration about statements allegedly made to the principal of Jefferson Elementary School; only the information that Ms. Carlson learned on February 22, 2012, that the school's principal would no longer participate in the program, with no explanation as to why. Thus, there is simply no basis in the evidence presented to conclude that *anyone* uttered the defamatory statements alleged in the complaint, let alone any of the defendants. And, as noted above, admissible evidence is required for plaintiff to show a probability of success; she cannot fill in lacunae in the declarations with facts alleged in the complaint. (*Overstock*, *supra*, 151 Cal.App.4th at p. 699.)

In short, plaintiff has failed to show a probability of success with respect to any cause of action, as asserted against any defendant. To the extent the defendant's alleged statements fall under the protection of subdivision (e)(1) of the anti-SLAPP statute, the litigation privilege precludes any such showing. To the extent the statements fall under the protection of subdivision (e)(4) of the anti-SLAPP statute, plaintiff's evidence

---

[7] To the extent plaintiff may intend to base any claim on statements dating from 2009, the applicable one-year statute of limitations would bar the claim. (§ 340, subd. (c).)

20

submitted in opposition to defendants' motion is inadequate to establish a probability of success.  Defendants' anti-SLAPP motion, therefore, should have been granted with respect to all causes of action, as asserted against all defendants.

## III.  REQUEST FOR DISMISSAL

After this case was fully briefed and a tentative opinion had been drafted and mailed to the parties, and after oral argument had been set, we received requests for dismissal of the appeals.

An appellant may not dismiss an appeal as a matter of right.  (*Huschke v. Slater* (2008) 168 Cal.App.4th 1153, 1160 [imposing $6,000 sanctions on attorney for unreasonable delay in notifying appellate court that parties had settled and dismissed the underlying case].)  Rather, pursuant to California Rules of Court, rule 8.244(c)(2), "On receipt of a request or stipulation to dismiss, the court *may* dismiss the appeal and direct immediate issuance of the remittitur."  (Italics added.)  Thus, dismissal is discretionary. Here, because the resolution of this case is fact specific, we grant the requests.

## IV.  DISPOSITION

The appeals are dismissed.  The parties shall bear their own costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
         P.J.

We concur:

RICHLI
    J.

MILLER
    J.