**Josef BOKSA, et al., Plaintiffs,**

v.

**KEYSTONE CHEVROLET COMPANY, Defendant.**

**No. 82 C 3356.**

United States District Court, N.D. Illinois, E.D.

Dec. 30, 1982.

---

Albert Koretzky, Chicago, Ill., for plaintiffs.

Arthur J. Sabin, Chicago, Ill., Berks, Berks & Marcus, Des Plaines, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Josef and Maria Boksa ("Boksas") and Vera Cortes ("Cortes") have sued Keystone Chevrolet Company ("Keystone"), alleging violations of the Truth in Lending Act, 15 U.S.C. §§ 1631 and 1638 ("TILA"). Both sides have moved for summary judgment, and Keystone has also moved for an award of attorneys' fees. For the reasons stated in this memorandum opinion and order:

1. Plaintiffs' motion is denied.

2. Keystone's motion for summary judgment is granted, but its motion for attorneys' fees is denied.

### Facts [1]

On June 18, 1981 Boksas signed a Keystone customer order form (the "Order") and paid a $300 deposit toward the purchase of a $6,241.46 automobile. On June 22 Boksas and Cortes signed a "Retail Instalment Contract," financing the purchase price less the $300 deposit and a $1,700 C.O.D. payment.

Two provisions of the Order are relevant here. On its front side the Order stated immediately above the signature lines: [2]

I certify that I am eighteen (18) years of age or older and hereby acknowledge receipt of a copy of this order and I have read the printed matter on the back here-

---

1. There is no dispute over the evidentiary facts.

2. This is a literal transcription, including such matters as inconsistencies in capitalization of terms, inconsistencies in terminology (such as the use of "dealer" and "seller" to refer to the same party) and so on.

of and agree to it as a part of this order, the same as if it were printed above my signature.

If purchaser has requested dealer to arrange financing and purchaser has not been furnished a completely filled in disclosure statement, this Order is not binding on purchaser and purchaser may cancel it and recover the deposit. In the event of dealer arranged financing & where Purchaser has taken delivery of vehicle, on or before the end of the third working day from this date, Purchaser will return the vehicle to dealer at which time Purchaser will be advised, in accordance with the requirements of Regulation Z, of the terms of whatever financing dealer may have been able to arrange for Purchaser. At that time, Purchaser, at his option, will do one of the following:

    1. Accept whatever financing has been obtained by dealer; or

    2. Pay in cash for the vehicle; or

    3. Cancel this order and pay to the seller a sum equal to its loss of value and any damage which may have been caused to the vehicle between the date hereof and the date of the return of the vehicle.

Order ¶ 5 (part of its Additional Terms and Conditions, referred to in the above quotation as "the printed matter on the back hereof") read:

Unless this Order shall have been cancelled by Purchaser under and in accordance with the provisions of paragraph 2 or 3 above, Dealer shall have the right, upon failure or refusal of Purchaser to accept delivery of the motor vehicle ordered hereunder and to comply with the terms of this Order, to retain as liquidated damages any cash deposit made by Purchaser, and, in the event a used motor vehicle has been traded in as a part of the consideration for the motor vehicle ordered hereunder, to sell such used motor vehicle and reimburse himself out of the proceeds of such sale for the expenses specified in paragraph 2 above and for such other expenses and losses as Dealer may incur or suffer as a result of such failure or refusal by Purchaser.

Complaint ¶ 8 alleges Order ¶ 5:

    (1) required plaintiffs to pay their $300 deposit as liquidated damages if they chose to cancel their purchase and

    (2) thereby interfered with their ability freely to negotiate the terms of financing, contrary to TILA's policy.

Keystone admits (Ans.Mem. ¶ 5) it would have violated TILA had the Order in fact bound Boksas on June 18—before any disclosure to them of financing terms. However Keystone argues (id. at ¶ 10) the earlier-quoted provisions from the front side of the Order mean no firm contractual obligation was created June 18, so no TILA disclosure duty existed that might have been breached on that date.

*Summary Judgment Motions*

Part of TILA, 15 U.S.C. § 1604, calls for Federal Reserve Board ("Board") promulgation of guidelines for the disclosure of consumer financing terms. Those guidelines have been set forth in "Regulation Z," 12 CFR Part 226 (1981). Regulation Z itself also provides for official staff interpretations of its terms, id. at § 226.1(d)(2) and (3). Such an official staff interpretation addresses the precise situation involved in the present action (id., App. [FC–0130], at 710–11, issued Nov. 2, 1977 and published at 42 Fed.Reg. 61,248 (1977)):

You first describe a situation where a customer wishes to purchase an automobile from your client, a dealer, and finance the sale. At the time the customer selects a car and requests financing, the terms of the instalment sales contract, as well as the identity of the finance company ultimately purchasing it, are uncertain, making completion of the instalment sales contract impractical. You wish to know whether insertion of the following provision in the sales contract would defer "consummation" of the transaction, as that term is defined by § 226.2(kk) of Regulation Z, and permit the dealer to make the disclosures required by Regulation Z, and permit the dealer to make the disclosures required by Regulation Z when financing is accepted by customer[:]

If this is a credit sale and the disclosure statement has not been completely filled in, this order is not binding on the buyer and buyer may cancel it and recover the deposit.

The staff has previously taken the position that, for purposes of giving the disclosures required by Regulation Z for closed end credit, "consummation" occurs when the customer binds himself to the transaction, unless State law provides that consummation occurs at some earlier time (see Public Information Letters 623 and 841). Therefore, in the opinion of the staff, where State law does not provide otherwise, the required disclosures could be given when financing is accepted by the customer, provided that no contractual obligation to purchase exists until the customer accepts financing.

You next describe a similar situation in which your client wishes to provide a customer with a car immediately, before financing can be arranged and the appropriate disclosure made under Regulation Z. You ask whether the following provision in a sales contract would permit the dealer to defer the disclosures required by Regulation Z until financing is accepted by the customer[:]

> On or before the _____ day of _____, 1977, buyer will return the vehicle to dealer at which time buyer will be advised, in accordance with the requirements of Regulation Z, of the terms of whatever financing dealer may have been able to arrange for buyer. At that time, buyer, at his option, will do one of the following:
>
> 1. Accept whatever financing has been obtained by dealer; or
>
> 2. Pay in cash for the vehicle; or
>
> 3. Cancel this order and pay for any damage which may have been caused to the vehicle between the date hereof and the date of the return of the vehicle.

As in the previous situation, the Regulation Z disclosures must be given when the transaction is "consummated." In the opinion of the staff, consummation and, therefore, the disclosures may be deferred until financing is accepted by the customer, assuming State law does not provide that consummation occurs before this time and that, prior to the customer's acceptance of financing, there is no obligation on the part of the customer to purchase the vehicle.[3]

■ Keystone explains (Ans.Mem. ¶¶ 6–8) the provisions on the front of the Order were in fact derived directly from the November 1977 staff interpretation. Keystone wrote those provisions to comply with TILA and Regulation Z, as interpreted by the Board staff. That contention is plainly confirmed by the contractual tracking of the staff interpretation language.

*Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980) teaches:

> [D]eference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive . . . .

Moreover TILA itself recognizes a good faith defense for acts done in conformity with Board regulations or staff interpretations. 15 U.S.C. § 1640(f).

Clearly, then, Keystone's Order provisions as to dealer-arranged financing operated to defer any irrevocable purchase contract until plaintiffs accepted the financing contract. Plaintiffs do not contend there was not full disclosure of financing terms in the instalment contract itself.

Finally, ordinary rules of contract construction lead to the conclusion the front-page provisions made Order ¶ 5 (like the rest of the purchase contract of which it was a part) inoperative whenever a purchaser requested dealer-arranged financing and then elected to cancel before full disclosure of financing terms. Under the front-page provisions (1) such a purchaser had the unconditional right to cancel the Order, including *all* its reverse-side provisions, and

---

**3.** Plaintiffs have not argued the relevance of any provision of State law.

(2) recovery of the deposit was specifically assured in that event.

Plaintiffs have proffered only nonpersuasive, makeweight contentions in opposition to those just discussed. They have perceptibly shifted ground between their first memorandum (Mem. ¶¶ 9–10) and their second (Ans.Mem. ¶ 8), but they have been consistent in one respect: Their arguments at each stage of the briefing have been untenable.

### Attorneys' Fees

Keystone attorney Arthur J. Sabin ("Sabin") has filed an affidavit in which he raises the possibility plaintiffs and their attorney, Albert Koretzky ("Koretzky"), did not file this action in good faith. Koretzky has filed a counter-affidavit denying some of Sabin's factual allegations.

■ Because the facts are in dispute, this Court cannot determine on the present record whether Sabin's claim is accurate. In any case, though, Sabin's charges raise issues more appropriately within the jurisdiction of the Illinois Attorney Registration and Disciplinary Commission. If Koretzky has engaged in improper solicitation of legal business or other unprofessional activities, the Commission and not this Court is the proper forum for redress.

As to the direct issue before this Court, Keystone has identified no provision allowing an award of attorneys' fees to a successful TILA defendant. *Cf.* 15 U.S.C. § 1640(a)(3) (allowing attorneys' fees and costs to successful *plaintiffs* under TILA).[4] To a certain extent TILA itself may encourage an "industry" of bringing suits for damages and attorneys' fees,[5] but that reflects a deliberate congressional choice with which this Court may not interfere.

■ Nor has 28 U.S.C. § 1927 ("Section 1927") generally abrogated the American Rule requiring litigants to bear their own attorneys' fees. This Court is empowered to impose sanctions under Section 1927 only for abuse of the judicial process. But plaintiffs' legal position *on their motion* was not so frivolous (in the legal sense) as to call for taxing their lawyer with fees. Plaintiffs' position was indeed weak—they have lost this action—but there was at least a minimal question of contractual and legal interpretation raised.

### Conclusion

There is no genuine issue of fact material to the question of Keystone's liability under TILA. Keystone is therefore entitled to a judgment as a matter of law. Plaintiffs' motion for summary judgment and Keystone's motion for an award of attorneys' fees are denied. This action is dismissed with prejudice.

---

4. See *Postow v. OBA Federal Sav. & Loan Ass'n,* 627 F.2d 1370, 1386–88 (D.C.Cir.1980), holding TILA's allowance of fees to successful plaintiff borrowers but not successful defendant lenders satisfies due process and equal protection requirements.

5. Indeed the Complaint here is obviously a production line product (see pages 1, 2 and 4) with individualized facts shoehorned in as page 3.