[No. B084839. Second Dist., Div. Four. Nov. 13, 1995.]

JEAN T. WEBER, Individually and as Trustee, etc., Plaintiff and Appellant, v.
IKE LANGHOLZ et al., Defendants and Respondents.

1580

**COUNSEL**

R. P. Reddingius and Daniel B. Condon for Plaintiff and Appellant.

Salz & Salz and Brian Alan Baker for Defendants and Respondents.

**OPINION**

**VOGEL (C. S.), Acting P. J.**—Plaintiff and appellant Jean T. Weber, "individually and as trustee for the Jean T. Weber Trust," brought this action

against Unique Funding, Inc., and its assignees defendants and respondents Langholz and Wolveck, under the federal Truth in Lending Act (15 U.S.C. § 1601 et seq., hereafter the Act), seeking return of interest and fees paid on a loan secured by residential property. The trial court granted summary judgment in favor of defendants on multiple grounds raised in defendants' motion, including that the Act does not apply to the parties' transaction, and that even if it did plaintiff waived or did not timely exercise rights under the Act. Pursuant to an attorney fee clause in the promissory note and deed of trust, the court also awarded over $21,000 in attorney fees to defendants. Plaintiff appeals from the judgment contending the court erred in finding the Act inapplicable and in awarding attorney fees. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are mostly undisputed. Jean T. Weber is an 89-year-old widow living on Social Security and investments. She has a revocable living trust, of which she is the trustee. She began investing heavily in coins, borrowing and liquidating trust property in order to give Eugene Steinledge money to buy coins for her. Over a period of time approximately $600,000 was given to Steinledge for this purpose. The last of this money came from the loan transaction involved here.

Title to Weber's home was in the Jean T. Weber Trust. On January 17, 1990, Jean T. Weber as trustee of the Jean T. Weber Trust borrowed $160,000 from Unique Funding, Inc., signing a promissory note and deed of trust securing the loan with the residence property. Interest was $2,000 monthly and the principal was due February 1, 1991. Unique Funding retained $24,000 as prepaid interest and charged additional fees and commissions which, when added to the retained interest, amounted to over $49,500 according to the complaint. Defendants Langholz and Wolveck purchased the note from Unique Funding in January 1990.

Plaintiff was unable to pay the principal due on February 1, 1991. In order to avoid foreclosure, plaintiff sold the property to a third party, then paid defendants the balance due. The deed by which Jean T. Weber as trustee of the Jean T. Weber Trust sold the property to the buyers was executed May 14, 1991, and recorded June 21, 1991. The escrow for the sale was opened April 19, 1991, with escrow instructions signed by Jean T. Weber as Trustee.

The theory of plaintiff's suit, filed February 19, 1992, is that Unique Funding violated the requirement of the Act that the consumer be given notice of the right to rescind the loan within three days. (15 U.S.C. § 1635.) The parties dispute when plaintiff gave notice that she was electing to

rescind the transaction. Defendants contend that plaintiff lost the right to rescind when she agreed on April 19, 1991, to sell the subject property to a third party. (15 U.S.C. § 1635(f).)

The trial court granted summary judgment on each of several grounds raised by defendants. (1) The Act does not apply because the loan transaction was with Jean T. Weber as Trustee of the Jean T. Weber Trust. The Act applies only to "consumer" credit transactions and defines consumer as a "natural person" and exempts transactions with an "organization," which is defined to include a trust (15 U.S.C. §§ 1602(c), (h), 1603(*l*)). (2) The Act does not apply because the purpose of the loan was to invest in coins. The Act defines a consumer credit transaction as one "primarily for personal, family, or household purposes" (15 U.S.C. § 1602(h)). (3) Even if the Act applies, plaintiff did not timely seek rescission. She could not seek rescission after contracting to sell the subject property to a third party (15 U.S.C. § 1635(f)). (4) At the time of the transaction plaintiff signed a handwritten waiver of the three-day right to rescind, which was effective despite its failure to recite any emergency reason. The Act permits a consumer to waive the three-day rescission period. (15 U.S.C. § 1635(d); 12 C.F.R. former § 226.23(e), now § 226.15(e) (1995).)

DISCUSSION

*Truth in Lending*

██  Plaintiff's case is based on 15 United States Code section 1635(a) which requires a creditor to clearly and conspicuously disclose the right of an obligor to rescind the transaction within three business days.[1] That section applies to "any consumer credit transaction." Section 1602(h) provides, "The adjective 'consumer,' used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended *is a natural person*, and the money, property, or services which are the subject of the transaction are *primarily for personal, family, or household purposes.*" (Italics added.)

Here the transaction was with Jean T. Weber as trustee of the Jean T. Weber Trust. Not only does section 1602(h) define consumer as a natural person, but section 1603(*l*) exempts "[c]redit transactions involving extensions of credit . . . to organizations." Section 1602(c) defines "organization" to mean "a corporation, government or governmental subdivision or agency, *trust, estate,* partnership, cooperative, or association." (Italics added.) By the plain language of the statute, this transaction is excluded.

---

[1]All further statutory references are to 15 United States Code unless otherwise indicated.

On the other hand, a revocable living trust with the settlor as trustee has become a common device for people to manage their own assets during lifetime, avoid having to establish a conservatorship in the event of incapacity, and avoid probate upon death. (Drafting Cal. Revocable Living Trusts (Cont.Ed.Bar 3d ed. 1994) §§ 2.1 to 2.3, pp. 2-2 to 2-4; *Fisch, Spiegler, Ginsburg & Ladner* v. *Appel* (1992) 10 Cal.App.4th 1810, 1813 [13 Cal.Rptr.2d 471].) Neither party cites any federal authority or legislative history in point, but it seems unlikely Congress had this type of trust in mind when it defined consumer credit transactions as involving natural persons and excluded trusts. In *Fisch, Spiegler, Ginsburg & Ladner* v. *Appel, supra,* 10 Cal.App.4th at page 1813, the court held the settlors of a revocable living trust had a reversionary interest in the subject property which was sufficient to claim a homestead exemption, which can be claimed only by natural persons. It appears the current regulations under the Act take a similar view that "natural person" includes persons whose ownership interest in their dwelling will be subject to a security interest. (12 C.F.R. § 226.2(a)(11) (1995).)

We need not decide, however, if Congress intended a trustee of a revocable living trust to be considered a natural person, however reasonable that conclusion might be. Another necessary element of plaintiff's case is that the loan be "primarily for personal, family, or household purposes." (§§ 1602(h) [definition of consumer credit], 1603(*l*) [exemption of "extensions of credit primarily for business, commercial, or agricultural purposes"].) Plaintiff contends this involves a question of fact inappropriate for resolution by summary judgment. A question of fact can become one of law, however, when only one reasonable conclusion can be drawn from the undisputed foundational facts. (*Tryer* v. *Ojai Valley School* (1992) 9 Cal.App.4th 1476, 1480 [12 Cal.Rptr.2d 114].)

It is undisputed that this transaction was to provide part of the funding for plaintiff's investment of $600,000 in coins, an investment program ongoing before this transaction. Plaintiff's own declaration showed she wanted the loan to take advantage of a good opportunity to buy certain coins at a bargain price.

In *Thorns* v. *Sundance Properties* (9th Cir. 1984) 726 F.2d 1417, the court listed factors to consider in determining whether a loan is for personal, family, or household purposes or for business or commercial purposes. These are, the relationship to the borrower's primary occupation, the degree to which the borrower personally manages the funds, the ratio of the funds to the borrower's income, and the size of the transaction. (*Id.* at p. 1419.) Here the loan was very large, $160,000, and was obtained expressly to fund part

of a $600,000 investment program in coins. Although plaintiff relied on Mr. Steinledge to manage the investment, she is still an investor. We conclude as a matter of law on the undisputed facts that the purpose of the loan was not primarily personal or household but business investment; therefore the loan was exempted from the Act. (See also *Tower* v. *Home Const. Co. of Mobile, Inc.* (S.D.Ala. 1978) 458 F.Supp. 112, 117; *Puckett* v. *Georgia Homes, Inc.* (D.S.C. 1974) 369 F.Supp. 614, 619-620.)

Finally, even assuming that the Act applies to this transaction and that Unique Funding failed to disclose to plaintiff the three-day right to rescind, plaintiff did not timely exercise her statutory rights but sold the subject property to a third party. Although ordinarily the three-day rescission period would not begin to run until the lender made the required disclosure of the right to rescind (§ 1635(a)), section 1635(f) provides, "Time limit for exercise of right. An obligor's right of rescission shall expire three years after the date of consummation of the transaction *or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section . . . have not been delivered to the obligor . . . .*" (Italics added.) In *Hefferman* v. *Bitton* (9th Cir. 1989) 882 F.2d 379, 383-384, the court held that the "sale of the property" for the purpose of this deadline is when the party *contracts* to sell the property, rather than the date of the ultimate conveyance. The court reasoned that allowing a consumer to rescind after selling the property would cloud titles and inhibit transactions, and that this concern arises when the contract to sell is executed. "Allowing consumers to rescind or attempt to rescind after entering such a contract implicates the rights of the purchaser and his financing agency and could produce needless litigation and other difficulties." (*Id.* at p. 384.)

Here, plaintiff made a tactical choice to sell the property to a third party in order to avoid foreclosure. Plaintiff did not rescind or attempt to rescind under the Act before contracting on April 19, 1991, to sell the property; therefore she did not exercise her rights within the time required by the Act.[2] In her complaint she alleged the date of rescission was December 31, 1991, and in answers to interrogatories claimed it was in January 1992. In opposition to summary judgment plaintiff's attorney cited letters he wrote to Unique Funding on February 25 and March 22, 1991. Neither of these letters was an attempt to rescind under the Act. The February 25 letter requested a copy of the disclosure statement and information concerning Unique Funding's knowledge of plaintiff's financial circumstances and of Mr. Steinledge.

---

[2] In light of this conclusion we need not consider defendants' contention that plaintiff waived her right to rescission despite the fact that her handwritten waiver did not recite any emergency circumstances as required by 12 Code of Federal Regulations, former section 226.23(e), now section 226.15(e) (1995).

The March 22 letter again sought a copy of the loan documents and asserted Unique Funding might have been guilty of negligence or overreaching concerning plaintiff's ability to repay the loan; it did not assert rights under the Act. The letter reiterated plaintiff's desire that Unique Funding delay a foreclosure sale and give plaintiff an opportunity to sell the property.

### Attorney Fees

As to the trial court's award of attorney fees to defendants, plaintiff contends (1) because the Act does not provide for awards of attorney fees to prevailing defendant lenders, the court could not award fees under Civil Code section 1717, and (2) the amount was inadequately substantiated by the declaration of defendants' attorney. There is no merit to these contentions.

The promissory note and the trust deed signed by plaintiff both provide that plaintiff shall indemnify, hold harmless, and reimburse defendants for all expenses including court costs and attorney fees incurred in connection with the note, and in connection with any action or suit arising out of the note, wherein final judgment is entered in favor of defendants, for all costs including attorney fees, which shall be deemed costs of the judgment. By the terms of plaintiff's own agreement, the court properly awarded contractual attorney fees to defendants under Civil Code section 1717.

Plaintiff points out that the Act allows attorney fees to consumers who successfully enforce the liability of lenders under the Act, but does not provide a reciprocal right to lenders who successfully defend. (§ 1640(a)(3) ["in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission, (the amount of the award shall include) the costs of the action, together with a reasonable attorney's fee as determined by the court"]; *Postow v. OBA Federal S & L Ass'n* (D.C. Cir. 1980) 627 F.2d 1370, 1387-1388 [201 App.D.C. 384]; *Boksa v. Keystone Chevrolet Co.* (N.D.Ill. 1982) 553 F.Supp. 958, 962.) This is not controlling, because the award to defendants here is not under the Act but on a different basis, plaintiff's contractual agreement to pay defendants' attorney fees.

Plaintiff contends that to award attorney fees under Civil Code section 1717 would frustrate the protection for the consumer in the federal statute. Essentially, plaintiff argues that in this situation California Civil Code section 1717 is preempted by the federal Truth in Lending Act, although she cites no authority supporting that proposition. We find no federal preemption.

Congress could have decided to make no provision whatsoever for attorney fees in the Act, leaving both parties to bear their own attorney fees in

accordance with the normal "American rule." (See, e.g., *Trope* v. *Katz* (1995) 11 Cal.4th 274, 278 [45 Cal.Rptr.2d 241, 902 P.2d 259].) Congress decided to provide only for successful borrowers and not for successful lenders. But to paraphrase *California* v. *ARC America Corp.* (1989) 490 U.S. 93, 103 [104 L.Ed.2d 86, 95-96, 109 S.Ct. 1661], it is one thing to say that Congress defined what sort of recovery consumers could obtain under the Act; it is altogether different and inappropriate to say that Congress thereby intended to prohibit the parties from agreeing by contract, or the states from enforcing their own independent statutes, that a prevailing defendant be entitled to attorney fees. If Congress intended to prohibit borrowers from agreeing in a promissory note to pay the lender's attorney fees in the event of unsuccessful suit under the Act, it could have done so expressly by prohibiting such a term in a lending agreement. Congress did not do so. Civil Code section 1717 is a broad law applying to all contractual agreements containing provisions for attorney fees. A congressional intent to preempt such a state law is not to be presumed by mere implication but must clearly appear. (*California* v. *ARC America Corp.*, *supra*, 490 U.S. at pp. 100-101 [104 L.Ed.2d at pp. 93-94].)

In *Hayer* v. *National Bank of Alaska* (Alaska 1980) 619 P.2d 474, the court held that where a borrower raised a successful Act claim as a setoff against the lender's suit on the underlying debt, the Act did not preclude awarding the lender attorney fees, pursuant to state civil procedure, as the party who prevailed overall. The court said, "The Hayers also argue that Alaska Rule of Civil Procedure 82, under which partial attorney's fees are awarded to the prevailing party as a matter of course, is in derogation of the Act and therefore should not have been utilized. We do not agree. The Truth-in-Lending Act provides that if a debtor raises a claim under the Act, as a partial defense, the debtor may be awarded a reasonable attorney's fee for successful assertion of that claim. However, success on one claim does not necessarily make the debtor the prevailing party in the entire action, and need not preclude the court from awarding offsetting attorney's fees to the prevailing party under Alaska Rule of Procedure 82. The congressional policy of encouraging private claims under the Truth-in-Lending Act would not be thwarted by such an award." (*Id.* at pp. 476-477.)

Plaintiff's last contention is that defendants "failed to establish the reasonableness of their fee claim." The declaration of defendants' attorney in support of the fee claim stated in part, "I was retained in April 1992. At that time, my hourly rate was $175.00. Starting September 1, 1992, my hourly rate was increased to $200.00. All of the fees incurred by my clients were connected to my services . . . . [¶] Through February 28, 1994, my clients

have incurred $18,075.00 in attorneys fees, which can be generally summarized as follows [describing the work done]."[3]

Plaintiff complains that counsel did not state the total number of hours nor substantiate the hours or amounts with copies of time records or copies of billing statements. Counsel's declaration and verified cost memorandum were, however, made under penalty of perjury. Mathematical calculation could show the number of hours was between 90 and 103. The work done was described. The trial court could make its own evaluation of the reasonable worth of the work done in light of the nature of the case, and of the credibility of counsel's declaration unsubstantiated by time records and billing statements. Although a fee request ordinarily should be documented in great detail, it cannot be said in this particular case that the absence of time records and billing statements deprived the trial court of substantial evidence to support an award; we do not reweigh the evidence. (*Melnyk* v. *Robledo* (1976) 64 Cal.App.3d 618, 623-625 [134 Cal.Rptr. 602].)

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Klein (Brett), J.,* concurred.

---

[3]Additional fees were generated by subsequent proceedings.

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.