Filed 3/12/21

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| RIMMA BOSHERNITSAN et al., Plaintiffs and Appellants, v. BELVIA BACH et al., Defendants and Respondents. | A159532 (San Francisco City and County Super. Ct. No. CUD-19-665414) |

Rimma Boshernitsan and Mark Vinokur (appellants) brought this unlawful detainer action against respondents Belvia Bach and four of her children (the tenants) in August 2019. Appellants sought to evict the tenants under a provision of San Francisco's rent control ordinance[1] that allows a "landlord" to evict renters from a unit to make the unit available for a close relative of the landlord (the family move-in provision). (Rent Ord., § 37.9, subd. (a)(8)(ii).) A rule enacted by the San Francisco Rent Stabilization and Arbitration Board (Board) defines "landlord" for purposes of the family move-

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.D.

[1] San Francisco Administrative Code, chapter 37, Residential Rent Stabilization and Arbitration Ordinance (Rent Ordinance).

in provision as "a natural person, or group of natural persons, . . . who in good faith hold a recorded fee interest in the property."[2]  (Rule 12.14(a).)

The tenants demurred to the complaint, arguing that their landlord is not such a natural person or group of natural persons because title to the apartment building is held by appellants' revocable living trust.  The trial court accepted this argument, sustained the demurrer without leave to amend, and entered judgment for the tenants in December 2019.

In sustaining the demurrer, the trial court correctly ruled that a trust is not a "natural person."  (See, e.g., *Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson* (1987) 197 Cal.App.3d 1, 4.)  But it was mistaken in assuming that appellants' trust is the landlord.  As a matter of law, only trustees—not trusts—can hold legal title to property.  We hold that natural persons who are acting as trustees of a revocable living trust and are also the trust's settlors and beneficiaries qualify as a "landlord" under the family move-in provision.  Accordingly, appellants are not barred from seeking to evict the tenants under that provision, and we reverse and remand for further proceedings.[3]

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Appellants own a two-unit building in San Francisco.  They live in one unit, and the tenants rent the other.  In mid-2018, appellants transferred title of the building to the Vinokur and Boshernitsan Living Trust Dated

---

[2] All further rule references are to the Board's Rules.

[3] We recognize that evictions are currently restricted because of the COVID-19 pandemic, which began after the trial court ruled.  We express no opinion on how such restrictions may affect this suit on remand.

2

April 30, 2018 (the trust).[4] About a year later, they served the tenants with a notice of termination of tenancy, claiming an intent to move Vinokur's mother into the tenants' unit under the authority of the family move-in provision.

After the tenants declined to vacate the premises, appellants brought this unlawful detainer action against them. The complaint alleges that appellants "hold[] 100% of the interest in the property and the title as trustees" of the trust. Appellants also attached the notice of termination as an exhibit to the complaint.

The tenants demurred, arguing that (1) the eviction was not being sought by a "landlord" as defined in rule 12.14(a) and (2) the notice of termination "add[ed] requirements more onerous" in various respects than those of the Rent Ordinance. In response, appellants argued that they as trustees, not the trust itself, hold title to the property. Thus, although admitting that a "trust is not a natural person," they argued that they, a group of natural persons, were the landlord, not the trust. Appellants also responded that the notice of termination was proper.

The trial court sustained the demurrer without leave to amend and entered judgment in the tenants' favor. The court's written order recited, "The property is owned by a trust and not a 'natural person.' For purposes of [Rent Ordinance, § 37.9, subdivision (a)(8),] a landlord is a 'natural person' or 'a group of natural persons.' The drafters of the [Rent Ordinance] and [the Rules] limited the definition of the landlord as stated above and excluded

---

[4] The tenants filed a request for judicial notice of the recorded grant deed by which appellants transferred the property to themselves as trustees of the trust. Appellants did not oppose the request, and although the trial court did not explicitly rule upon it, we presume it was granted. (See *Aaronoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910, 918–919.)

3

non-natural persons thereby." The court did not rule on the other ground for demurrer the tenants raised.

## II.
## DISCUSSION

Both below and on appeal, the tenants framed the primary issue as whether the term "landlord" under rule 12.14 includes a revocable trust established by natural persons who are both settlors and trustees of the trust.[5] We agree with appellants, however, that title to the building is held by them, not the trust. Accordingly, the relevant question is whether appellants in their capacity as trustees qualify as a landlord for purposes of the family move-in provision, and we conclude that they do.

### A.   Governing Law

#### 1.   Standard of review

We review an order sustaining a demurrer de novo. (*Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 276.) In doing so, "we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.) Regardless of a trial court's stated reasons for sustaining a demurrer, we must affirm " 'if any one of the several grounds of demurrer is well taken.' " (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

"The proper interpretation of a statute is a question of law" that we also review de novo. (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 42.) This

---

[5] "The *settlor* is the person creating the trust. The *trustee* holds the property in trust for the *beneficiary*." (13 Witkin, Summary of Cal. Law (11th ed. 2017) Trusts, § 31, p. 643; see Rest.3d Trusts, § 3.)

4

rule applies equally to review of local ordinances.  (*Van Wagner Communications, Inc. v. City of Los Angeles* (2000) 84 Cal.App.4th 499, 509, fn. 9; see *Danekas v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2001) 95 Cal.App.4th 638, 645.)

> 2.      The Rent Ordinance and rule 12.14

"The San Francisco rent ordinance restricts tenant evictions except upon certain specified grounds." (*Reynolds v. Lau* (2019) 39 Cal.App.5th 953, 964.)  One such ground is set forth in Rent Ordinance section 37.9, subdivision (a)(8), which allows a landlord to evict a tenant when the "landlord seeks to recover possession [of the rented property] in good faith, without ulterior reasons and with honest intent," for either the landlord's own "use or occupancy as his or her principal residence for a period of at least 36 continuous months" (the owner move-in provision) or, under the family move-in provision, "the use or occupancy of the landlord[']s grandparents, grandchildren, parents, children, brother or sister, or the landlord[']s spouse or the spouses of such relations, as their principal place of residency for a period of at least 36 months, in the same building in which the landlord resides as his or her principal place of residency." (Rent Ord., § 37.9, subd. (a)(8)(i)–(ii).)  The landlord must also satisfy a number of other requirements, including, for "landlords who bec[a]me owners of record of the rental unit after February 21, 1991," being "an owner of record of at least 25 percent interest in the property." (Rent Ord. § 37.9, subd. (a)(8)(iii); see generally *Cwynar v. City and County of San Francisco* (2001) 90 Cal.App.4th 637, 644–645.)

The Rent Ordinance defines "landlord" as "[a]n owner, lessor, [or] sublessor, who receives or is entitled to receive rent for the use and occupancy of any residential rental unit or portion thereof in the City and County of San

5

Francisco, and the agent, representative[,] or successor of any of the foregoing." (Rent Ord., § 37.2, subd. (h).) Rule 12.14(a), which is entitled "Evictions under Section 37.9(a)(8)," further provides that "[f]or purposes of an eviction under Section 37.9(a)(8) of the [Rent Ordinance], the term 'landlord' shall mean a natural person, or group of natural persons . . . who in good faith hold a recorded fee interest in the property."[6]

B.    *Title to the Building Is Held by Appellants as Trustees, not by the Trust.*

Appellants argue that they, not the trust, hold title to the building. They point out that revocable trusts have no right to sue or be sued, and they assert that the trust is inseparable from them as the settlors and trustees. We agree that appellants as trustees "hold a recorded fee interest" in the building under rule 12.14(a).

To begin with, the tenants are simply incorrect when they argue that "according to the allegations of the [c]omplaint and the [g]rant [d]eed, the owner of the [property] is the Vinokur and Boshernitsan Living Trust dated April 30, 2018." The complaint alleges that "*Plaintiffs*"—defined as Boshernitsan and Vinokur—"are owners of the [b]uilding, of which [the tenants' unit] is part, *holding 100% of the interest in the property and the title as trustees* of the Vinokur and Boshernitsan Living Trust dated April 30, 2018." (Italics added.) Likewise, the recorded grant deed states that appellants "hereby grant *to Mark Vinokur and Rimma Boshernitsan, Trustees*, or their successors in interest, of the Vinokur and Boshernitsan Living Trust dated April 30, 2018, and any amendments thereto, their whole interest in [the building]." (Italics added.) Thus, the plain terms of both the

---

[6] The parties do not dispute the validity or applicability of either the Rent Ordinance or rule 12.14.

6

complaint and the grant deed specify that the building's title is held by appellants as trustees, not by the trust.

Even apart from these circumstances, the law of trusts confirms that the building's title is held by appellants as trustees, because trusts do not themselves as entities hold title to property. "Unlike a corporation, a trust is not a legal entity." (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1343.) Rather, a trust is " 'a fiduciary *relationship* with respect to property.' " (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1132, fn. 3, quoting Rest.2d Trusts, § 2, p. 6.) When property is held in trust, " 'there is always a divided ownership of property,' " generally with the trustee holding legal title and the beneficiary holding equitable title. (*Gonsalves v. Hodgson* (1951) 38 Cal.2d 91, 98; *Beyer v. Tahoe Sands Resort* (2005) 129 Cal.App.4th 1458, 1475; *Galdjie*, at p. 1343; *Herrick v. State of California* (1983) 149 Cal.App.3d 156, 161; see *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1319.)

Furthermore, when settlors transfer property to a revocable living trust, there is even more reason to conclude that the property's title is held by the trustees, not the trust. Such property "is considered the property of the settlor for the settlor's lifetime." (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1065–1066.) "[A] revocable inter vivos trust is recognized as simply 'a probate avoidance device,' " and "when property is held in this type of trust, the settlor and lifetime beneficiary ' "has the equivalent of full ownership of the property." ' " (*Zanelli v. McGrath* (2008) 166 Cal.App.4th 615, 633–634; *Steinhart v. County of Los Angeles, supra,* 47 Cal.4th at p. 1320.)

The tenants point to decisions supposedly establishing that "a trust has the capacity to own property."[7] To be sure, some cases, including the two the

---

[7] The tenants also argue that because Probate Code section 56 defines

tenants cite, have made general references to trusts "owning" property. (*Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2010) 184 Cal.App.4th 196, 208; *Trustees of the Ken Lusby v. Piedmont Lumber* (N.D. Cal. 2015) 132 F.Supp.3d 1175, 1180; see, e.g., *Fisch, Spiegler, Ginsburg & Ladner v. Appel* (1992) 10 Cal.App.4th 1810, 1812 (*Appel*).) But these imprecise references are hardly compelling, particularly when the issue being discussed did not involve an ownership distinction between a trust and a trustee. (See *Carolina Casualty*, at p. 208 ["undisputed" that revocable trust "owned" property, but settlor was effectively owner for purpose of insurance policy provision]; *Piedmont Lumber*, at p. 1180 [court's statement that trust was an "owner[] of [the] property" based on public documents stating that *trustees* of trust held title].) In any event, such comments do not overcome the bedrock principle that a trustee holds legal title to property held in trust.

     C.     *Appellants as Trustees Qualify as a "Landlord" Under the Family Move-in Provision.*

Having concluded that appellants as trustees "hold a recorded fee interest" in the building under rule 12.14(a), we turn to consider whether they are also "a group of natural persons" under that rule and thereby qualify as a "landlord" under Rent Ordinance section 37.9, subdivision (a)(8).

---

"person" to include a trust and the Civil Code provides that "[a]ny person" may hold property in California (Civ. Code, § 671), trusts can own property. The tenants fail to explain why the Probate Code's definition of the term should be read into a Civil Code provision, particularly since the Civil Code contains its own definition of "person"—which does not mention trusts. (See Civ. Code, § 14, subd. (a) ["the word person includes a corporation as well as a natural person"].) Similarly, the tenants' reliance on a Department of Health Services regulation defining a "business entity" to include "any natural person, or form of business organization, including . . . a . . . trust" (Cal. Code Regs., tit. 17, § 33006) is unavailing.

8

Although the tenants admit that appellants are natural persons, they contend that natural persons *acting as trustees* are not "natural persons." We are not persuaded.

"The fundamental purpose of statutory interpretation is to ascertain the intent" of the legislative body that adopted the enactment. (*People v. Jacobo*, *supra*, 37 Cal.App.5th at p. 42.) "We begin by considering the actual language of the statute, giving its words their usual and ordinary meaning. [Citations.] We construe the words of a statute as a whole and within the overall statutory scheme to effectuate the intent of the [legislative body]. [Citation.] If the words of the statute are unambiguous, the plain meaning of the statute governs and there is no need for construction. [Citations.] However, if the statutory language is ambiguous, we look to other indicia of the intent of the [legislative body]. [Citations.] Those other indicia may include the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." (*Ibid.*)

We liberally construe remedial legislation, such as the Rent Ordinance, to effectuate its purposes. (*Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd.* (1989) 215 Cal.App.3d 490, 495 (*Parkmerced*).) Simultaneously, " 'unlawful detainer statutes are to be strictly construed' " because " 'the remedy of unlawful detainer is a summary proceeding to determine the right to possession of real property . . . [and] is purely statutory in nature.' " (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 480 (*Dr. Leevil*).) Thus, it is " 'essential that a party seeking the remedy bring [itself] clearly within the statute.' " (*Ibid.*)

The Rent Ordinance " 'was enacted to respond to two principal factors: (a) a critically low vacancy rate within the city and county [of San Francisco], and (b) excessive, unregulated rent increases.' " (*Parkmerced, supra,* 215 Cal.App.3d at p. 495.) Although " '[t]he clear objective of the ordinance and the compelling public policy which gave birth to its enactment . . . was the extension of some measure of protection to tenants in residence' " (*ibid.*, italics omitted), the ordinance also has a goal of "assur[ing] landlords fair and adequate rents." (Rent Ord., § 37.1, subd. (b)(6).) In addition, the family move-in provision, while subject to significant limitations, benefits landlords in that it is "consistent with the state Ellis Act which provides that, with limited exceptions, a statute, ordinance[,] or regulation may not 'compel the owner of any residential real property to offer, or continue to offer, accommodations in the property for rent or lease . . . .' (Gov. Code, § 7060, subd. (a).)" (*Baba v. Board of Supervisors* (2004) 124 Cal.App.4th 504, 509.)

The tenants suggest that a trustee is not a "natural person" because a trustee takes only "representative actions . . . on behalf of a trust."[8] But case law has recognized the distinctive status of a trustee who is, as both appellants are here, also settlor and beneficiary of a revocable living trust. For example, in *Aulisio v. Bancroft* (2014) 230 Cal.App.4th 1516, the Court of Appeal held that a plaintiff who appeared in propria persona on behalf of a trust of which he was the "sole settlor, trustee, and beneficiary" did not violate the prohibition against the unauthorized practice of law under

---

[8] In making this point, the tenants liken trusts to corporations, which also "can only act through human representatives." Unlike trusts, however, corporations can hold title to property, and a corporate owner or corporate trustee clearly would not qualify as a "landlord" under rule 12.14(a). (See *Caressa Camille, Inc. v. Alcoholic Beverage Control Appeals Bd.* (2002) 99 Cal.App.4th 1094, 1102 [" 'A corporation is not a natural person' "].)

10

Business and Professions Code section 6125. (*Aulisio*, at pp. 1523–1525.) Although generally nonattorney trustees cannot appear in propria persona because they are representing the interests of others, a trustee who is also the only settlor and beneficiary "does not appear in court proceedings concerning the trust in a representative capacity." (*Id.* at pp. 1519–1520, 1524–1525.) Instead, such a trustee "represents his or her own interests, not someone else's," and therefore has the right to self-representation. (*Id.* at pp. 1525–1526.)

Similarly, *Appel* relied on the nature of a revocable living trust to hold that settlors and trustees of such a trust who lived in the subject property were entitled to protection under the homestead exemption to the enforcement of judgments under Code of Civil Procedure section 704.910. (*Appel*, *supra*, 10 Cal.App.4th at p. 1813.) Even though "the homestead exemption applies only to the property of natural persons," *Appel* concluded that the exemption should be construed liberally to protect homeowners who "plac[e] title to property in a revocable living trust."[9] (*Appel*, at p. 1813.) The Court of Appeal observed that "[t]he importance of the living trust as an estate device" also supported its conclusion, explaining, "[R]evocable living trusts enjoy extensive use. They serve many estate planning functions related to taxation and other matters. For example, they can be used to manage the trustor's assets during his or her lifetime, avoiding the necessity of establishing a conservatorship in the event of incapacity; provide for the disposition of property without probate on the trustor's death; and afford

---

[9] In reaching this holding, *Appel* assumed that the trust itself held legal title to the subject property. (See *Appel*, *supra*, 10 Cal.App.4th at pp. 1812–1813.) As we previously discussed, however, a trust itself cannot hold any interest in property.

11

unified management of the property of a surviving spouse and a decedent."
(*Ibid.*; see *Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1582–1583.)

The unique status of a trustee who is also settlor and beneficiary of a revocable living trust puts to rest the tenants' concerns about the ramifications of interpreting the term "landlord" to include such a trustee. The tenants argue that allowing trustees to qualify as landlords "would create the potential for erosion of the two critical protective requirements designed to ensure that owner move-in and qualified relative move-in . . . evictions [i.e., evictions under Rent Ordinance section 37.9, subdivision (a)(8)] are done in good faith . . . [:] (1) ensuring that the landlord [or the relative] really moves[]in and resides [at the property] for 36 months, and (2) ensuring that <u>only</u> those 'qualified relatives' permitted by the [Rent Ordinance] would be able to displace existing tenants." The tenants contend that because a settlor can designate "multiple unrelated persons" as trustees, each of whom "could seek to move[]in one or more qualified relatives," considering a trustee to be a "landlord" would "increase exponentially . . . the finite group of persons originally envisioned . . . who could displace long-term tenants."

To begin with, we limit our holding to the situation in which a landlord is settlor, trustee, and beneficiary of a revocable living trust. Indeed, appellants explicitly state that they "do not seek a blanket universal rule from this Court . . . that any kind of trustee of any kind of a trust can qualify [as a] 'landlord' under [the Rent Ordinance]." Thus, our holding involves no risk of any exponential increase in people "who could displace long-term tenants," as the qualifying "landlord" is fixed once the revocable living trust is created.

Even if our holding were not so limited, however, the tenants' concerns about a revolving group of trustees are misplaced. As the tenants implicitly

12

recognize, a trust can have no more than four trustees in order for all the trustees to qualify as landlords, since a landlord who acquired title after February 21, 1991, must have at least a 25 percent ownership to seek eviction under the owner move-in provision or family move-in provision. (Rent Ord., § 37.9, subd. (a)(8)(iii).)  And a landlord cannot seek to recover possession of a unit for a family member's use unless the unit is "in the same building in which the landlord resides as his or her principal place of residency, or in a building in which the landlord is simultaneously seeking possession of a rental unit" under the owner move-in provision.  (Rent Ord., § 37.9, subd. (a)(8)(ii).)  Thus, even if a settlor designated other trustees, no single trustee could seek eviction under the family move-in provision unless that trustee also lived in or was seeking to live in the same building.

Adding further protection, "[o]nce a landlord has successfully recovered possession of a rental unit pursuant to [the owner move-in provision], then no current or future landlords may recover possession of any other rental unit under [the same provision].  It is the intention of this section that only one specific unit per building may be used for such occupancy under [the owner move-in provision] and that once a unit is used for such occupancy, all future occupancies under [that provision] must be of that same unit."  (Rent Ord., § 37.9, subd. (a)(8)(vi).)  Thus, "one owner's exercise of the right to recover possession for owner occupancy can effectively extinguish this right with respect to all other current and future owners of the building."  (*Cwynar v. City and County of San Francisco*, *supra*, 90 Cal.App.4th at p. 645.)  As a

result, the specter of successive trustees evicting tenants to take advantage of the family move-in provision simply does not exist.[10]

Finally, a landlord who seeks eviction under the family move-in provision must do so "in good faith, without ulterior reasons and with honest intent." (Rent Ord., § 37.9, subd. (a)(8).) "Requirements of good faith and proper motive are 'substantive limitations on eviction.' " (*DeLisi v. Lam* (2019) 39 Cal.App.5th 663, 676.) The designation of a trustee solely so that trustee could take advantage of the family move-in provision would likely fail this test.

### D. *The Judgment Cannot Be Affirmed on the Tenants' Other Basis for Demurring to the Complaint.*

As mentioned above, the tenants also demurred to the complaint on the basis that the notice of termination of tenancy "adds requirements more onerous" than those of the Rent Ordinance. Under the Rent Ordinance, any tenants who wish to assert they are protected from eviction or entitled to additional payment based on a protected status must submit notice to the landlord, but the notice of termination here requires the tenants to submit notice to appellants' counsel in a particular manner. We asked for and received supplemental briefing from the parties on whether we must affirm on this basis despite rejecting the trial court's reason for sustaining the demurrer. (See *Aubry v. Tri-City Hospital Dist.*, *supra*, 2 Cal.4th at p. 967.) We conclude that the judgment cannot be upheld on this ground.

---

[10] It appears from the record that appellants did not rely on the owner move-in provision to gain occupancy of their unit. Given that the building is only two units, however, if Vinokur's mother moves into the tenants' unit there is no risk of other tenants unrelated to appellants being evicted in the future.

14

The Rent Ordinance provides certain protections if (1) a tenant in the unit "is 60 years of age or older and has been residing in the unit for 10 years or more"; (2) a tenant in the unit "[i]s disabled [as defined by the Rent Ordinance] and has been residing in the unit for 10 years or more, or is catastrophically ill [as defined by the Rent Ordinance] and has been residing in the unit for five years or more;" or (3) "a child under the age of 18 or any educator resides in the unit," the effective date of the notice of termination falls during the school year, and other requirements are met. (Rent Ord., § 37.9, subds. (i)(1)(A)–(B), (j)(1).) Not only do these statuses potentially prevent eviction from a unit under the family move-in provision, they may entitle tenants who do vacate a unit to an additional relocation payment. (Rent Ord., §§ 37.9, subds. (i)(1), (j)(1), 37.9C, subd. (e)(2).)

To avoid eviction, a "tenant must submit a statement, with supporting evidence, to the landlord" to demonstrate that the tenant is "a member of one of the classes protected." (Rent Ord., § 37.9, subds. (i)(4), (j).) And a tenant is entitled to receive a portion of the additional relocation payment "within fifteen (15) calendar days of the landlord's receipt of written notice from [the tenant] of entitlement to the relocation payment along with supporting evidence." (Rent Ord., § 37.9C, subd. (e)(2).) In short, to take advantage of the protections afforded by a covered status, a tenant is required to submit to "the landlord" (1) a written document stating that the tenant has that status and (2) supporting evidence.

Here, the notice of termination discloses the potential protections for a covered tenant, not only quoting from the applicable portions of the Rent Ordinance but also attaching the text of sections 37.9, 37.9B, and 37.9C, and rule 12.14. The tenants do not claim that the notice of termination failed to apprise them of their rights under these provisions. Instead, they object

15

because the notice of termination directs that notice of protected status and supporting evidence "shall be submitted to the landlord's authorized agent Aleksandr A. Volkov" (appellants' counsel) "via mail or delivered in person, to agent's office," at an address in Walnut Creek.[11]  As to submissions for the purpose of avoiding eviction, the notice of termination also provides, "Failure by YOU to submit, within the 30-day period [running from service of the notice of termination], a statement to the landlord notifying about YOU allegedly being a member of the class protected from eviction . . . shall be deemed an admission that you are not a member of such class."

The tenants argue that the notice of termination thus required more of them than does the Rent Ordinance, in that "(1) [the] tenant must provide written notice to a <u>specific lawyer at a law office</u> . . . ; (2) the particular notice must be submitted by <u>hand-delivery or mail upon lawyer Aleksandr Volkov</u> . . . ; (3) the place of delivery is [in Walnut Creek,] <u>some 30 miles more than required</u> [given appellants reside in San Francisco]; [and] (4) failure to submit written notice upon Attorney Volkov in Walnut Creek . . . via mail or hand-delivery within 30 days constitutes an admission that [the] tenant is not protected."  Because the Rental Ordinance "must be strictly complied with," the tenants contend that the notice of termination's deviation from it in these respects requires dismissal of the action.

We agree with the tenants that unlawful detainer statutes, and the Rental Ordinance specifically, are to be strictly construed.  (See *Dr. Leevil*, *supra*, 6 Cal.5th at p. 480; *Naylor v. Superior Court* (2015) 236 Cal.App.4th

---

[11] The quoted language is from the portion of the notice of termination addressing how to notify the landlord of possible protection from eviction. The portion of the notice of termination addressing how to claim an additional relocation payment states that the relevant documentation is "to be given" to appellants' counsel.

Supp. 1, 8.) In particular, " '[t]he statutory requirements in [unlawful detainer] proceedings " 'must be followed strictly.' " ' " (*Dr. Leevil*, at p. 480.) We also agree that, at least at this stage of the proceedings, it is irrelevant whether the tenants have asserted or will assert they are entitled to protection from eviction or to additional relocation payments. (See *DHI Cherry Glen Associates, L.P. v. Gutierrez* (2010) 46 Cal.App.5th Supp. 1, 8–11.) We note, however, that the complaint alleges the tenants already sought and received additional relocation payments, suggesting the notice of termination's instructions for submitting notice of protected status did not hamper the tenants from asserting their rights.

In any case, the tenants fail to convince us that the deviation between the notice of termination's wording of how to bring protected status to the landlord's attention and the Rent Ordinance's wording of the same renders the entire unlawful detainer action "fatally[]flawed." If the tenants were to provide a statement of protected status directly to appellants, and appellants rejected it because it was not sent to their attorney, the tenants might have an argument that they were required to comply only with the Rent Ordinance, not the notice of termination's more specific requirements. But the tenants have not demonstrated that any provision of the Rent Ordinance, the Board rules, or any other authority governing unlawful detainer actions requires an eviction notice even to address the method by which a tenant is to submit a statement, much less limits what the notice may say in that regard. The identification of a more particular method for submitting information to a landlord is hardly akin to the failure to comply with governing *requirements* for seeking the remedy of unlawful detainer. (Cf., e.g., *Dr. Leevil*, *supra*, 6 Cal.5th at pp. 478–480 [landlord not entitled to relief where it did not satisfy statutory prerequisites for serving notice of removal].) Accordingly,

17

we are unable to affirm the judgment based on the other ground on which the tenants demurred to the complaint.

## III.
### DISPOSITION

The order sustaining the tenants' demurrer without leave to amend and the judgment of dismissal are reversed, and the matter is remanded with directions to enter a new order overruling the demurrer.  Appellants are awarded their costs on appeal.

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.




_____

Sanchez, J.




*Boshernitsan v. Bach*  A159532

19

Trial Court:

Superior Court of the City and County of San Francisco


Trial Judge:

Hon. Charles F. Haines


Counsel for Plaintiffs and Appellants:

Aleksandr A. Volkov, Volkov Law Firm, Inc.


Counsel for Defendants and Respondents:

Stephen Booth, Tenderloin Housing Clinic, Inc.

*Boshernitsan v. Bach*  A159532